■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM AGUANNO, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Hellenbrand, J.), rendered December 9, 1982, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review, inter alia, the denial, after a hearing (Demakos, J.), of that branch of the defendant's omnibus motion which was to suppress statements.

Ordered that the judgment is affirmed.

On August 23, 1981, the defendant was arrested for his role in the homicide of one Salvatore Cappola. Detectives Eppolito and Furtado arrested the defendant pursuant to an arrest warrant at the 104th Precinct in Queens. At the precinct, the defendant made certain preliminary statements which were suppressed by the hearing court.

The defendant was then placed, handcuffed, in the rear of a radio motor patrol car to be transported to the 62nd Precinct in Brooklyn. About five minutes after leaving the precinct, the defendant stated, "I'm sorry this happened, this thing happened. I didn't mean to kill him. We just both were stabbing him * * * we just got scared and we kept stabbing him * * * I knew Sal, I didn't mean it, I was high you know, high". At this point, Detective Eppolito cautioned the defendant that the existence of the warrant meant that he could not question the defendant, who had no obligation to say anything to him. The defendant said, "It really doesn't matter now".

The detective then told the defendant that he had spoken to his father, who indicated that the defendant had gone to St. John's Hospital, on the night of the incident, to have his wounded hand tended to and that the father would try to have the defendant contact the detective. The detective mentioned that he had checked with the hospital but that the defendant had not been registered there. The defendant then stated, "I used a fake name, I didn't use my real name * * * That's it, I'm about to go to jail, I'll go for everything". At no time was the defendant advised of his Miranda rights.

While we agree with the hearing court's determination that the first set of statements made by the defendant in the police car was spontaneously uttered and thus admissible despite the fact that the defendant's right to counsel had indelibly attached *(see, People v Samuels,* 49 NY2d 218; *People v Settles,* 46 NY2d 154), we find that the second set of statements, made essentially in response to the detective's remarks, cannot be so characterized. The specific statements relative to the defendant's injury, which was sustained during the stabbing of the deceased, were "triggered by police conduct which should reasonably have been anticipated to evoke a declaration from the defendant" *(People v Lynes,* 49 NY2d 286, 295; *see, People v Lanahan,* 55 NY2d 711; *People v Maerling,* 46 NY2d 289), and were not "made without apparent external cause, i.e., self-generating" *(People v Stoesser,* 53 NY2d 648, 650).

However, we conclude that the erroneous admission of the second set of statements into evidence was harmless in light of the overwhelming evidence of guilt, since there is no reasonable possibility that the jury would have acquitted the defendant had it not been informed of those statements *(see, People v Krom,* 61 NY2d 187; *People v Crimmins,* 36 NY2d 230).

The trial court properly concluded that a circumstantial evidence charge was not warranted *(see, People v Benzinger,* 36 NY2d 29, 32), since the defendant's statement that he "just kept stabbing" the deceased constituted a direct acknowledgment of guilt *(see, People v Licitra,* 47 NY2d 554; *People v Rumble,* 45 NY2d 879).

The remainder of the defendant's contentions have been considered and found to be without merit. Thompson, J. P., Rubin, Lawrence and Kunzeman, JJ., concur.