■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY LEFTWICH, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Meyerson, J.), rendered February 20, 1985, convicting him of manslaughter in the first degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress inculpatory statements and showup identification testimony.

Ordered that the judgment is affirmed.

On April 24, 1984, at approximately 8:45 P.M., the defendant and codefendant Frederick Miller forcibly took, at gunpoint, a radio from Luis Ortiz and two other persons standing in front of 233 Sands Street in Brooklyn. During the robbery, Ortiz rushed Miller, who then shot and killed Ortiz. Maurice Fitzgerald, who heard a shot emanate from the front of 233 Sands Street, observed the defendant, whom he called "Monse", running from the crime scene with a radio on his shoulder. It is undisputed that the defendant's "street name" is Monse. On April 26, the defendant was arrested while exiting his school and immediately transported by Detective Hickey to the police precinct. Approximately 20 or 30 minutes after arriving at the precinct, the defendant was advised of his *Miranda* rights. He waived his rights and confessed his participation in the robbery and felony murder of Ortiz. Prior to the commencement of this custodial interrogation, the defendant had been placed in the interrogation room with a police officer while Detective Hickey and other detectives from the Housing Authority prepared for the interrogation. After confessing his role, the

defendant voluntarily accompanied police officers in a vehicular search of the neighborhood for the purpose of locating the codefendant Miller. The search, of a duration of approximately 30 minutes, proved fruitless. Upon returning to the precinct, the defendant's father was present. The father had learned that his son was in custody. When the father professed disbelief regarding his son's involvement in the crime, Detective Hickey instructed the defendant to tell his father what he had done. The detective overheard an inculpatory statement made by the 17-year-old defendant to his father, which, in substance, was a repetition of his previously elicited confession. Subsequently, the defendant made two videotaped statements to an Assistant District Attorney, which were undisputedly preceded by voluntary and knowing waivers of his *Miranda* rights.

On the same date Fitzgerald identified the defendant at a showup conducted at the precinct. Prior to viewing the defendant through a one-way mirror, Fitzgerald furnished Detective Hickey with the defendant's first and last name and informed the detective that he had known defendant from junior high school and from the neighborhood for at least the past couple of years.

The defendant's contention, that the People failed, as a matter of law, to prove the voluntariness of his first confession to Detective Hickey on the ground that no officers testified as to what may or may not have been said or done to the defendant during the 20- to 30-minute interval after his arrival at the precinct and prior to being advised of his *Miranda* rights, is specious. While it is the People's burden to establish beyond a reasonable doubt that the defendant's statements were voluntarily made, "[t]his does not mean * * * that the People are mandated to produce all police officers who had contact with the defendant from arrest to the time that the challenged statements were elicited" (*People v Witherspoon,* 66 NY2d 973, 974). The prosecution introduced sufficient testimony from the detective eliciting the first inculpatory statement to establish the defendant's knowing and intelligent waiver of his constitutional rights. When the People in the first instance establish the legality of police conduct and the defendant's waiver of his rights, as they have here, the burden of persuasion on a motion to suppress rests with the defendant (*People v Love,* 85 AD2d 799, *affd* 57 NY2d 998). The defendant, who never took the stand or offered any evidence at the hearing, presented no bona fide factual predicate which demonstrated that other officers possessed material

evidence on the issue of whether the statement elicited by Detective Hickey was the product of promises or coercive measures. Consequently, the People met their burden of proving the first oral confession made by defendant to Detective Hickey was admissible. Nor was the defendant entitled to any further *Miranda* warnings prior to the second inculpatory statement made by him to his father, which was overheard by Detective Hickey.

The denial of that branch of the defendant's omnibus motion which was to suppress Fitzgerald's identification of the defendant as the man he saw running with a radio from the scene of the crime was correct. The procedure used in this case was more in the nature of a confirmation rather than an identification in view of the fact that Fitzgerald knew the defendant by sight, and by both his street name and surname *(see, People v Fleming,* 109 AD2d 848; *People v Tas,* 51 NY2d 915; *People v Laguer,* 58 AD2d 610).

Lastly, the defendant contends that his inculpatory statements and Fitzgerald's identification testimony should be suppressed as the tainted fruit of an arrest not predicated upon probable cause. Inasmuch as the defendant never requested a *Dunaway* hearing nor objected at the combined *Huntley-Wade* hearing to the admission of this evidence on the ground the arrest was illegal, and, thus, effectively deprived the People of a fair opportunity to present their proof to rebut such a claim, the issue has not been preserved for appellate review *(see, People v Miguel,* 53 NY2d 920; *People v Martin,* 50 NY2d 1029). Brown, J. P., Rubin, Kooper and Sullivan, JJ., concur.