■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RAMSEY WADE, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Baker, J.), rendered July 1, 1986, convicting him of robbery in the first degree (two counts), petit larceny, and criminal possession of stolen property in the third degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial

of those branches of the defendant's omnibus motion which were to suppress physical evidence, his statements to the police, and pretrial and in-court identification testimony.

Ordered that the judgment is affirmed.

At approximately 2:40 A.M. on August 15, 1985, Police Officer Heller heard a radio report that a robbery with a gun had just occurred and that three black males had been seen leaving the scene of the robbery in a dark, shiny Chevrolet, early 1970's model, with chrome wheels. Approximately 10 minutes later, Officer Heller observed a car that matched the description near Fulton Avenue and North Franklin Street in Hempstead, a short distance from the scene of the robbery, which had occurred in the parking lot of Blimpie's restaurant on Fulton Avenue. He followed the vehicle a short distance, observing that it was occupied by three black males. Officer Heller directed the car to pull over and radioed for assistance. He then approached the Chevrolet with gun drawn and ordered the occupants to place their hands in sight. The defendant was seated in the rear of the car. Shortly thereafter, about 4 police cars arrived at the scene in response to Officer Heller's call for assistance, including 1 driven by Officer Clarke. Officer Heller directed the occupants to exit the Chevrolet.

After the defendant exited the vehicle and just prior to Officer Heller's search of the pockets of his shorts, the defendant turned his head in the direction of Officer Clarke and said, "Look, I have a couple of bags of smoke in my pocket. I'm selling some smoke." Officer Heller then searched the pockets of the defendant's shorts, and found $160 in varying denominations, along with five "nickel" bags of marihuana.

Prior to the arrival of the two robbery victims, who were being transported to the scene for the purpose of identifying the possible suspects, Officer Clarke, without knowledge of the proceeds of the robbery, observed a gold chain in the Chevrolet in plain view behind the front passenger seat, entered the Chevrolet, and removed it. After the arrival of the complainants, who immediately identified the defendant as the robber, Officer Clarke inquired whether a gold chain was among the proceeds of the robbery. An affirmative response was given and one of the complainants identified the chain as belonging to him. The defendant also made a statement, apparently after the arrival of the complainants, that "[t]hose two guys wanted to buy some smoke, but they didn't have enough money".

Officer Heller transported the defendant to the police station, and, while processing his arrest, the defendant saw the gold chain on top of the desk and exclaimed, "Oh, there is the chain I snatched from that guy".

At the outset, we reject the People's contention that the initial stop of the Chevrolet was based upon probable cause to justify an immediate arrest of the occupants of the vehicle for robbery *(see, People v Cook,* 85 AD2d 672; *cf., People v Brnja,* 50 NY2d 366; *Chambers v Maroney,* 399 US 42, *reh denied* 400 US 856; *People v Messam,* 112 AD2d 449, *lv denied* 66 NY2d 616; *People v Davidson,* 110 AD2d 776). Notwithstanding, Officer Heller had a reasonable suspicion to stop the car in which the defendant was apprehended upon observing the presence of three black males in a motor vehicle matching the description of the getaway vehicle as to make, color, model year and wheels, which was located in close proximity to the scene of the robbery shortly after the crime was committed *(see, People v Hicks,* 68 NY2d 234; *People v Adams,* 123 AD2d 769, *lv denied* 69 NY2d 707; *People v Brooks,* 125 AD2d 481, *lv denied* 69 NY2d 877). Furthermore, the actions of Officer Heller in approaching the Chevrolet with gun drawn and ordering the occupants out of the vehicle were justified as appropriate measures to insure his safety and did not *alone* transform a valid stop into a de facto arrest *(see, People v Brnja, supra; People v Adams, supra; People v Finlayson,* 76 AD2d 670, 678-679, *lv denied* 51 NY2d 1011, *cert denied* 450 US 931). Since the radio broadcast about a robbery provided reason to believe that, if the Chevrolet was, in fact, the getaway car, the occupants might be armed, Officer Heller also had reasonable suspicion to conduct a *Terry*-type frisk for weapons *(Terry v Ohio,* 392 US 1; *see, People v Brnja, supra,* at 372). The defendant's spontaneous remark that he had "smoke" in his pocket and was selling "smoke" provided Officer Heller with the requisite probable cause to search the pockets of his shorts.

Upon recovering marihuana from the defendant's pocket, the officer had probable cause to arrest him for unlawful possession of marihuana, a crime charged in the indictment. A review of the record supports a finding that upon Heller's discovery of the marihuana, a de facto arrest of the defendant had taken place *(see, People v Yukl,* 25 NY2d 585, 589). Since Officer Heller had probable cause to arrest the defendant for unlawful possession of marihuana, the defendant's subsequent detention at the scene of the stop for the purpose of conducting a show-up identification to confirm or dispel the arresting

officer's reasonable suspicion that the defendant had committed a robbery was reasonable and not violative of his Fourth Amendment rights. Since this case does not involve a de facto arrest of the defendant that was not predicated upon probable cause, we reject his contention that a valid stop became invalid because the subsequent actions of the police in searching his pockets and the Chevrolet and in detaining him in order to conduct a show-up identification procedure exceeded the permissible limits of the *Terry*-type frisk and detention sanctioned in *People v Hicks* (68 NY2d 234, *supra*).

Accordingly, the hearing court properly denied the defendant's motion to suppress the money and marihuana seized from his pockets, the gold chain seized from the Chevrolet, the defendant's statements, and the complainants' show-up identifications because none of this evidence was the tainted fruit of either an illegal stop or an unlawful arrest. Moreover, the defendant never challenged the search of the Chevrolet and seizure of the gold chain on the basis of an invasion of a privacy interest in the area of the car searched or a possessory interest in the item seized *(see, People v Millan,* 69 NY2d 514, 520, n 5; *People v David L.,* 56 NY2d 698, *revg* 81 AD2d 893, *on dissenting opn of Hopkins and Weinstein, JJ., at App Div; People v Hunter,* 55 NY2d 930, 931; *People v Ponder,* 54 NY2d 160). Consequently, the latter issue has not been preserved for appellate review *(see, People v Miguel,* 53 NY2d 920; *People v Martin,* 50 NY2d 1029; *People v Leftwich,* 134 AD2d 371, *lv denied* 70 NY2d 957).

The hearing court also properly denied that branch of defendant's motion which was to suppress the complainant's showup and in-court identification testimony on the ground the showup was an impermissibly suggestive pretrial identification procedure. Since the defendant was apprehended close in time and place to the scene of the robbery, the police acted properly in arranging a prompt showup *(see, People v Francheschi,* 128 AD2d 723; *People v Turner,* 120 AD2d 628; *People v Kennerly,* 117 AD2d 624, 625; *People v Love,* 57 NY2d 1023; *People v Brnja,* 70 AD2d 17, 23-24, *affd* 50 NY2d 366, *supra).* The mere fact that the defendant was standing beside a police officer and a few feet away from his companions at the time each complainant spontaneously identified him as the robber did not render the showup impermissibly suggestive, particularly where other police officers had also stood beside the defendant's companions, neither of whom the complainants could identify *(cf., People v Adams,* 53 NY2d 241, 246).

We also agree with the hearing court's conclusion that

defendant's statements were not obtained in violation of his *Miranda* rights. A review of the record discloses that the defendant's admission that he snatched the gold chain was prompted by his viewing of this item of evidence on Officer Heller's desk during the processing of his arrest and not by any question or act by Officer Heller designed to elicit a remark. Consequently, this admission, as well as the defendant's statement pertaining to his possession of marihuana, were admissible because they were spontaneous and not made in response to police interrogation *(see, People v Kaye,* 25 NY2d 139; *People v Sanders,* 79 AD2d 688, 691). Lawrence, J. P., Rubin, Eiber and Harwood, JJ., concur.