■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDRE JACKSON, Also Known as ARTHUR KELLY, Appellant.—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Aiello, J.), rendered October 27, 1986, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

Ordered that the matter is remitted to the Supreme Court, Kings County, to hear and report on whether or not the identification procedure held on August 10, 1984 was consistent with the defendant's constitutional rights, and the appeal is held in abeyance in the interim. The Supreme Court shall report with all convenient speed.

The defendant is charged with the shooting death of Aston "Skully" Gordon during the early morning hours of April 7, 1984. The shooting occurred in a marihuana "factory". It was the prosecution's contention that the defendant, who has the "street name" of "Frank", and two eyewitnesses to the shooting, Marion Babb and Anthony Felder, were fellow employees in the marihuana operation and were well known to each other when Babb and Felder identified the defendant as "Frank", the shooter, on August 10, 1984, at the station house. Based upon a representation that Felder knew the defendant, the defendant waived a *Wade* hearing prior to trial.

During the trial Donald Bryant, the manager of the marihuana operation, testified that he did not see "Frank" in the courtroom. Babb, who was allegedly an eyewitness, refused to be sworn, was held in summary contempt, and was sentenced to 30 days' imprisonment. Felder, the only other eyewitness, testified that "Frank" was the shooter and that after the shooting "Frank" had given him the murder weapon. When asked directly, Felder testified that he did not see "Frank" in the courtroom, that the defendant was not "Frank", that he did not remember if the defendant was "Frank", and that the defendant did not commit the murder.

However, Felder testified that he did identify the shooter at the station house on August 10, 1984. Although Felder testified that this was at a lineup, the People conceded and further testimony revealed that it was in fact a showup. Significantly, it developed that Felder had only started working at the marihuana operation a few hours before the shooting, that for most of the time Felder was downstairs while "Frank" was upstairs, and that Felder had never seen "Frank" before that night.

In view of the fact that Felder had not made an in-court

identification of the defendant, the prosecutor sought permission to introduce indirect proof of identification pursuant to CPL 60.25. The defense counsel objected on the grounds that the identification procedure employed on August 10, 1984 was suggestive. The court held that the defendant had waived a *Wade* hearing and thus could not challenge the showup identification at trial. The court then permitted Detective Scialabba to testify that after viewing the defendant in a showup on August 10, 1984, Felder identified him as "Frank". Under the circumstances of this case, we find that this was error and the defendant should be afforded an opportunity to test whether the showup procedure was consistent with his constitutional rights.

CPL 60.25 and its companion section CPL 60.30 set forth the conditions under which an eyewitness to a crime, who has subsequently identified the defendant in a constitutionally proper corporeal viewing, may testify. Under CPL 60.30 such an eyewitness may not only identify the defendant in court as the person he saw at the crime scene, but may also testify that he identified the defendant at the subsequent corporeal viewing.

CPL 60.25 addresses the problem presented when the eyewitness cannot make an in-court identification based on his present recollection because, for instance, of the passage of time or changes in the defendant's appearance. If the eyewitness testifies that at the corporeal viewing he identified a person whom he had seen at the time and place of the commission of the crime, but is unable to make an in-court identification, another witness who was present at the corporeal viewing may testify that the defendant is the person who was identified by the eyewitness. This constitutes evidence-in-chief.

The requirement of CPL 60.25 (1) (a) (ii), that the corporeal identification of the defendant after the commission of the crime be made "under circumstances consistent with such rights as an accused person may derive under the constitution of this state or of the United States", is the guarantee of reliability that permits such past identification to be received as evidence-in-chief connecting the defendant with the commission of the crime *(People v Jamerson,* 68 NY2d 984). Clearly, if the subsequent corporeal viewing was unduly suggestive or otherwise violative of the defendant's rights, the substitute identification procedure of CPL 60.25 may not be invoked.

Under the circumstances presented here, the fact that the

defendant had waived a pretrial *Wade* hearing should not have prevented the Supreme Court from conducting a hearing during the trial to determine whether or not the showup in which Felder identified the defendant was consistent with the defendant's constitutional rights. Initially we note that the waiver was premised on the representation by the prosecutor that Felder knew "Frank" prior to the shooting. While it is generally true that identification of a defendant by a witness who has known the defendant does not require a pretrial *Wade* hearing *(People v Gissendanner, 48 NY2d 543; People v Johnson, 124 AD2d 748, lv denied 69 NY2d 713; People v Timmons, 138 AD2d 428)*, this is based upon the fact that such an identification is merely confirmatory and any suggestiveness is irrelevant to an in-court identification by the eyewitness *(People v Gissendanner, supra; People v Johnson, supra; People v Timmons, supra)*. This would be applicable to an in-court identification made pursuant to CPL 60.30. However, the suggestiveness of the procedure is relevant under CPL 60.25, which is only employed in those situations where the witness is unable to make an in-court identification. Furthermore, contrary to the representation made by the prosecutor, Felder's trial testimony unequivocally demonstrated that he did not know "Frank" prior to the night of the shooting. Therefore, the renewed request of the defendant for a *Wade* hearing should have been granted *(People v Tillman, 74 AD2d 911)*.

At this hearing the People will be required to establish the existence of such exigent circumstances as are sufficient to overcome the unreliability inherent in station house showups *(see, People v Riley, 70 NY2d 523; People v Adams, 53 NY2d 241)*. Brown, J. P., Lawrence, Eiber and Sullivan, JJ., concur.