THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDRE JACKSON Also Known as ARTHUR KELLY, Appellant.— Appeal by the defendant from a judgment of the Supreme Court, Kings County (Aiello, J.), rendered October 27, 1986, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. By decision and order of this court dated May 8, 1989 *(People v Jackson,* 150 AD2d 491), this matter was remitted to the Supreme Court, Kings County, to hear and report on whether the identification procedure held on August 10, 1984, was consistent with the defendant's constitutional rights, and the appeal was held in abeyance in the interim. The Supreme Court has now complied.

Ordered that the judgment is reversed, on the law, the indictment is dismissed, and the matter is remitted to the Supreme Court, Kings County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

As noted in our previous decision and order in this matter, the defendant was charged with the shooting death of Aston

"Skully" Gordon on April 7, 1984, after an eyewitness to the homicide, Anthony Felder, identified him as the killer in a police station showup conducted on August 10, 1984. At trial, Felder was unable or unwilling to identify the defendant, and the prosecution then sought to introduce evidence of the witness's prior showup identification of the defendant pursuant to CPL 60.25 as evidence-in-chief. The proffered testimony was admitted without a *Wade* hearing, and we remitted the matter so that a *Wade* hearing could be conducted to determine whether the police-arranged identification procedure was "consistent with such rights as an accused person may derive under the constitution of this state or of the United States" (CPL 60.25 [1] [a] [ii]; *see, People v Jackson, supra).*

The prosecution conceded at the hearing that no exigent circumstances existed to justify the police station showup which was conducted some four months after the crime. Rather, the hearing record reveals that the showup procedure was employed by the police based upon their good-faith belief that the witness knew the defendant. However, the witness testified, *inter alia,* that he had only met the killer for the first time on the night of the crime, that he was in a different location from the killer for most of that night, and that he did not see the killer subsequent to that date until he identified the defendant at the time of the showup. He further testified that he had spent "a couple of hours [a] few hours" with the killer on the night of the offense, but was impeached with his prior testimony in which he indicated he was with the killer "maybe a half hour".

The hearing court, crediting the testimony of the eyewitness, found, *inter alia,* that the witness had spent an aggregate of as much as three hours with the killer prior to the commission of the charged offenses. Accordingly, the court concluded that while the showup procedure was not justified by exigent circumstances, its suggestiveness was irrelevant because the resulting identification of the defendant was confirmatory in nature. We disagree.

While it is true that the suggestiveness of a police-arranged showup procedure is rendered irrelevant where the identification of the accused is merely "confirmatory" *(see, People v Tas,* 51 NY2d 915; *People v Gissendanner,* 48 NY2d 543; *People v Stewart,* 144 AD2d 601; *People v Vasquez,* 141 AD2d 880), the question of whether a given viewing is confirmatory is one of degree. Hence, " 'When a crime has been committed by a family member, former friend or long-time acquaintance of the witness there is little or no risk [of taint through police

suggestion]. \* \* \* *But in cases where the prior relationship is fleeting or distant it would be unrealistic to ignore the possibility that police suggestion may improperly influence the witness in making an identification' " (People v Wharton,* 74 NY2d 921, 925-926, dissenting opn of Titone, J., quoting *People v Collins,* 60 NY2d 214, 219).

In the case before us, there was only limited interaction between the witness and the killer for the first time on the night of the crime, there were no previous or subsequent viewings or encounters between the two in a nonpolice setting, and the witness professed an inability to identify the defendant at trial. The witness and the defendant were not relatives, friends, or longtime acquaintances, nor is there any other evidence of familiarity between them in the hearing record. Moreover, the witness's powers of observation cannot fairly be likened to those of a law enforcement officer "[who is] experienced and expected to observe carefully the defendant for purposes of later identification and for completion of his official duties" *(People v Wharton, supra,* at 923; *see, People v Morales,* 37 NY2d 262). In short, the evidence adduced at the *Wade* hearing does not demonstrate that the identification of the defendant in this case was merely confirmatory in nature, as the relationship or familiarity between the witness and the killer was not of the type which would support such a conclusion. Inasmuch as we conclude that the identification was not confirmatory, the issue of suggestiveness is relevant.

It is well settled that "[s]howup identifications, by their nature suggestive, are strongly disfavored but are permissible if exigent circumstances require immediate identification *(People v Rivera,* 22 NY2d 453), or if the suspects are captured at or near the crime scene and can be viewed by the witness immediately *(People v Love,* 57 NY2d 1023)" *(People v Riley,* 70 NY2d 523, 529). Station house showups of the type involved herein are subject to especially close judicial scrutiny because "[u]nreliability of the most extreme kind infects showup identifications of arrested persons at police stations, and the evidence will be inadmissible as a matter of law unless exigency warrants otherwise" *(People v Riley, supra,* at 529).

In the instant case, it is conceded that there were no exigent circumstances to justify the station house showup which the witness viewed four months after the shooting, nor are any facts presented which detract from the inherent suggestiveness of the procedure. Hence, inasmuch as the showup procedure was unduly suggestive *(see, People v Riley, supra),* it was not consistent with the defendant's constitu-

tional rights as required by CPL 60.25 (1) (a) (ii), and the resulting identification should not have been admitted as evidence at trial. Accordingly, reversal is necessary. Moreover, because the trial record does not contain sufficient independent evidence of the defendant's identity as the person who committed the charged offenses, the indictment must be dismissed.

In view of the foregoing, we do not reach the defendant's remaining contentions. Brown, J. P., Lawrence, Eiber and Sullivan, JJ., concur.