■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CLAUDE JOHNSON, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Demakos, J.), rendered September 20, 1988, convicting him of arson in the first degree, criminal mischief in the first degree, and intimidating a witness in the second degree, upon a jury

verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress identification testimony.

Ordered that the judgment is affirmed.

The defendant's conviction, and that of his codefendant (see, *People v Webster*, 169 AD2d 796 [decided herewith] ), arose as a result of the firebombing of the home of a Queens man, Arjune, who had previously called the police several times regarding drug dealing in his neighborhood. On the night of November 9, 1987, Arjune had twice telephoned the police regarding some men "doing business" and "collecting money" in front of his home. As a result of his calls, several people were arrested.

At approximately 4:30 the following morning, Arjune awakened to the sound of his dogs barking. He then observed two men, whom he subsequently identified as the defendant and his codefendant, Webster, walking toward his home carrying bottles. These bottles turned out to be "Molotov cocktails", which the two men proceeded to throw at Arjune's house. During the melee that followed, Arjune's son, Shaun Hardin, and his cousin, Herrick Khan, also observed the perpetrators. Arjune accompanied the police in an effort to locate the perpetrators, and observed the defendant, whom Arjune had seen "a lot of times", nearby. The defendant was placed in custody and transported back to the scene of the crime, where he was also separately identified by Hardin and Khan while he was sitting alone and in handcuffs in the back seat of a police car.

After the police and fire department officials left the Arjune home, Arjune and his family were gathered in the living room when Webster returned with another man and with more Molotov cocktails. After setting the living room carpet and drapes ablaze, the pair fled. The police were again called, but no one was apprehended. That night, while the police were guarding Arjune's house, Webster returned and, after a chase, was apprehended. During the chase, both Arjune and Khan yelled to the police that the person who they were chasing was one of the men who had firebombed the house.

Prior to the joint trial, a *Wade* hearing was held, at which none of the identifying witnesses testified. Based on the testimony of two of the arresting officers to the effect that the identifying witnesses each had stated that they had seen the perpetrators before the day in question, the hearing court

concluded that the police-arranged identifications were confirmatory in nature, and therefore, that neither those identifications nor the witnesses' in-court identifications needed to be suppressed.

After trial, both of the defendants were convicted of arson in the first degree, criminal mischief in the first degree, and intimidating a witness in the second degree. The defendant was convicted of one count of each crime, while Webster was convicted of two counts of each crime, one in connection with each of his two visits to the Arjune home. The defendant hereby appeals.

On appeal, while conceding that suppression of the out-of-court identification by Arjune was properly denied (see, People v Love, 57 NY2d 1023), the defendant argues that the subsequent show-up identifications by Hardin and Khan were unnecessary and impermissibly suggestive. We agree. At the point at which those identifications occurred, the police were possessed of probable cause to arrest the defendant by virtue of Arjune's identification. There being no exigent circumstances present to justify the show-up identifications by Hardin and Khan and, given the suggestive circumstances under which they were made, all evidence thereof should not have been admitted at trial (see, People v Rayford, 158 AD2d 482; People v Dupree, 148 AD2d 466; People v Ford, 100 AD2d 941; see also, People v Riley, 70 NY2d 523). Nor can it be said that the People met their burden of coming forward with sufficient evidence to establish that the show-up procedure was confirmatory in nature (see, People v Miller, 137 AD2d 626, 628), as the only evidence adduced in this regard was the rather vague testimony of one of the arresting officers as to what Hardin and Khan told him about whether they knew the perpetrators prior to the time of the commission of the crime (see, People v Jackson, 159 AD2d 640). Moreover, no evidence of an independent source for the in-court identifications by Hardin and Khan was adduced at the Wade hearing and, despite the People's apparent belief to the contrary, this court cannot make its own finding of independent source based upon the trial testimony (see, People v James, 67 NY2d 662; People v Dodt, 61 NY2d 408, 417). Thus, Hardin and Khan should not have been permitted to identify the defendant as one of the perpetrators at trial.

However, we conclude that the erroneous admission of both the in-court and out-of-court identifications by Hardin and Khan is harmless beyond a reasonable doubt (see, People v Crimmins, 36 NY2d 230, 237). The remaining evidence against

the defendant, which consisted primarily of the testimony of Arjune, who identified the defendant shortly after the crime occurred as well as in court, provided overwhelming proof of the defendant's identity as one of the perpetrators. Arjune testified that he had known the defendant from the neighborhood and had seen him eight to ten times during the two weeks preceding the crime, the most recent viewing having occurred less than ten hours before the crime when Arjune saw the defendant in the company of two men who had been arrested pursuant to information that was provided to the police by Arjune. During the fire-bombing in which the defendant was involved, the area in front of Arjune's house was well-lit by two street lights. Shortly after the crime, Arjune picked the defendant out from a group of five people as one of the men involved in the firebombing. In sum, the evidence of the defendant's identity as one of the perpetrators was overwhelming, and there is no reasonable possibility that the error involved here may have contributed to the defendant's conviction. Thus, that error is harmless beyond a reasonable doubt (see, People v Crimmins, 36 NY2d 230, 237, supra).

The defendant's contention that the evidence adduced at trial was legally insufficient to establish his guilt of the crimes of which he was convicted is unpreserved for appellate review because it was not advanced with specificity before the trial court in support of the defendant's motion to dismiss made at the close of the People's case (see, People v Ross, 148 AD2d 643; People v Cardona, 136 AD2d 556), and we decline to review it in the exercise of our interest of justice jurisdiction.

We have considered the defendant's remaining contentions, including the contention that the sentence imposed was excessive, and find that they are either unpreserved for appellate review or without merit. Bracken, J. P., Brown, Kunzeman and Harwood, JJ., concur.