■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEROY SCOTT, Also Known as LEROY NICHOLS, Appellant. [594 NYS2d 213] —Judgment, Supreme Court, Bronx County (Phylis Skloot Bamberger, J.), rendered October 24, 1989, convicting defendant, upon his plea of guilty, of criminal possession of a

controlled substance in the third degree, and sentencing him, as a second felony offender, to a term of 4½ to 9 years, affirmed.

The suppression evidence at hearing was that two uniformed police officers stopped a taxicab in which defendant was a passenger when it unlawfully passed a stop sign. While one officer was checking the driver's license and registration, he saw defendant in the back seat bend over and move about, as if he was picking up or putting something down on the floor, and then quickly exit the cab, leaving behind a brown paper bag in open view. As the other officer, outside of the cab, asked defendant "What he was doing?" or words to that effect, the first, concerned that the bag might contain a gun, opened it and found 322 vials of cocaine.

The record supports the hearing court's finding that defendant intentionally abandoned the bag by deliberately discarding it as he hastily left the cab. Clearly, defendant's act of discarding the bag was not the result of any allegedly unlawful police conduct in targeting defendant, since "[t]here was no interaction between the police and defendant until after he betrayed his guilty conscience" *(People v Adams,* 173 AD2d 207, 208, *lv denied* 78 NY2d 1073; *see also, People v Kosciusko,* 149 AD2d 620, 621-622). Concur—Ross and Asch, JJ. Kupferman, J., concurs in the result, and Milonas, J. P., dissents, each in a separate memorandum as follows:

Kupferman, J. (concurring in the result).

I agree with the statement in the dissent that "the probative evidence does not establish that defendant had abandoned his property, and, at most, defendant's conduct was equivocal."

Nonetheless, under the circumstances, with the stop being proper and the back of the cab now empty, and in view of the equivocal situation, good police work required that the officer open the bag that was on the floor of the back seat and, therefore, there was no violation.

Milonas, J. P. (dissenting).

In my opinion, the conviction should be reversed and the indictment dismissed.

Defendant herein was indicted for criminal possession of a controlled substance in the second degree and resisting arrest. A pretrial hearing, at which the only witness was Police Officer James Tierney, was conducted in connection with the discovery of the narcotics. The officer who physically detained defendant did not testify. In that regard, Officer Tierney and

his partner were driving in a radio patrol car when he observed a livery cab run a stop sign at the intersection of Undercliff and Boscobel Avenues in Bronx County. The police vehicle, its lights flashing, followed the taxi for approximately one-half block until the officers managed to pull it over. At that point, Officer Tierney exited the patrol car and approached the taxicab on the driver's side, his partner advancing on the passenger side. Officer Tierney requested that the driver produce his "paperwork". Another man, whom he identified as defendant, was in the back seat.

According to Officer Tierney, defendant was "bending over and moving around as if he was either picking something up or * * * putting something down on the floor, after which time he got out of the vehicle". The officer also described defendant as "fidgeting around" and stated that he "flew out the side of the car" and that he stepped out "[i]n a very quick manner." Expanding his account of the incident on redirect, Officer Tierney asserted that "the door of the vehicle was still open, so the defendant was standing between the car and the door, and my partner was standing towards the end of the door." When defendant then "got out of the vehicle, he didn't have a chance to go either way. My partner was right next to him" and "in front of him". Moreover, defendant was "approximately two feet" away from the bag when he exited the cab.

While Officer Tierney's partner was questioning defendant as to what he was doing, Officer Tierney moved a few steps toward the rear of the cab and glanced through the window. On the floor of the back of the vehicle, "at the foot of where [defendant] had been motioning toward", there was a brown paper bag. The officer proceeded to open the rear passenger door on the driver's side and picked up the bag, which felt heavy. Officer Tierney asserted that "I believed there may have been a gun in the bag. When I opened the bag, I saw numerous vials of cocaine". After the officer called to his partner to cuff defendant, the latter began to put up some resistance to being arrested, but he was subdued and placed under arrest. The cabdriver was permitted to go and did not receive a summons for the traffic infraction.

Officer Tierney admitted on cross-examination that when he noticed that the taxi had failed to halt at a stop sign, it was his intention simply to issue a summons to the driver. Although he first perceived a person in the back seat of the vehicle while following it in the police car, he did not observe that individual bending down or doing anything else suspicious even when he subsequently walked by defendant in

order to approach the driver. Officer Tierney also did not see a gun, knife or any other weapon. Thus, the Supreme Court, in denying the motion to suppress, upheld the search of the brown paper bag based upon nothing more than the conclusion that defendant "flew" out of the cab, thereby supposedly displaying an interest in fleeing that was only averted by the presence of Officer Tierney's partner by the door, which amounted to his abandoning the bag. Further, his furtive gestures reinforced Officer Tierney's belief that since other crimes had been committed against livery drivers in the vicinity, the bag might contain a gun.

Yet, it is clear that the record demonstrates absolutely no facts which would warrant even a suspicion that there was a weapon in the bag. The officer did not have a report of a weapon nor did he observe a weapon or see or feel the outline of a weapon. In effect, the Supreme Court accepted the proposition that whenever there have been robberies of a cab driver in a neighborhood, the presence of a passenger with a package which might conceivably have a gun or knife in it is sufficient to subject its owner to at least a further inquiry, especially if he makes a motion in the direction of the bag. There is, however, no legal authority whatever that would sanction a search of a closed container in the back seat of a taxi founded upon no more than the passenger's reaching for it, or toward it, in a vehicle that has been stopped for a traffic infraction. Indeed, such a theory is inimical to the constitutional prohibition against unlawful searches and seizures in that "[t]he officers had no information that a crime had occurred or was about to take place, had not seen defendant do anything criminal, and were confronted only by facts susceptible of innocent interpretation" *(People v Howard,* 50 NY2d 583, 590, *cert denied* 449 US 1023).

As for the finding that defendant intended to flee from the cab and had abandoned the bag, there is simply no evidentiary justification for this conclusion. Certainly "[p]roperty which has in fact been abandoned is outside the protection of the constitutional provisions" *(People v Howard, supra,* at 592). In *People v Howard (supra),* the Court of Appeals explained that there is a presumption against the waiver of constitutional rights, and it is the People's burden to overcome that presumption *(see also, People v Kelly,* 172 AD2d 458, *affd* 79 NY2d 899). This Court stated in *People v Marrero* (173 AD2d 244, 245, *lv dismissed* 78 NY2d 969) that "[w]hether or not property has been abandoned is a question of intent" *(see also, People v Kelly, supra).*

The hearing court determined that by exiting rapidly from the cab, defendant indicated an intent to depart and was only prevented from doing so by Officer Tierney's partner, who had positioned himself outside the passenger door. On the contrary, the proof shows only that as defendant stepped out of the vehicle, he was blocked by the policeman and could not have left even had he been inclined to do so. Officer Tierney then proceeded to open a bag that was in the cab only two feet from where defendant was halted. In addition, the bag was examined without Officer Tierney even asking whether it belonged to defendant or whether defendant was leaving the area. It was at least as likely that defendant, a passenger in a taxicab that had been detained by the police for a traffic infraction, was merely getting out of the vehicle to ascertain what was occurring as it was that he planned to abscond from the scene. In no manner can it reasonably be found that the evidence supported the " 'exclusive inference' " that defendant was abandoning the bag *(People v Howard, supra,* at 593) in the process of fleeing.

While it is true that *Rios v United States* (364 US 253, 262, n 6) is distinguishable from the present situation, it is instructive that the United States Supreme Court did acknowledge therein that "[a] passenger who lets a package drop to the floor of the taxicab in which he is riding can hardly be said to have 'abandoned' it". In a case that is applicable here, the Second Department recently declared that "[i]t is settled that '[t]he police may not use traffic violations as a mere pretext to investigate the defendant on an unrelated matter' " *(People v Smith,* 181 AD2d 802, 803). *People v Smith (supra)* concerned a police surveillance of a "stash house" from which defendant exited carrying a canvas bag. He made a telephone call and then entered a cab. Notwithstanding that defendant was not a target of the police investigation, they followed the taxi, believing that there might be drugs in the bag, and it was thereafter stopped. Both the driver of the vehicle and defendant denied ownership of the bag. One of the officers reached into the car, grabbed the bag and opened it, discovering a gun and ammunition. The Second Department affirmed the Supreme Court's order granting suppression, deciding that the illegal U-turn made by the cab was simply not a proper reason to stop the taxi. As the Court noted *(supra,* at 803):

"Here, the officer who testified at the hearing admitted that he was following the defendant because he thought there might be drugs in the bag. Moreover, the police did not bother to give the cab driver a summons, or even ask to see his

license or registration. Thus, the alleged Vehicle and Traffic Law violation was clearly a mere pretext to stop the vehicle.

"In addition, the People's argument that the police had a 'reasonable suspicion' that criminal activity was afoot is without merit *(see, People v Hicks,* 68 NY2d 234; *People v Wade,* 143 AD2d 703). As the hearing court found, '[a]ll of the defendant's behavior was at least as compatible with his innocence as with his guilt'.

"We also find no merit to the People's contention that the bag and its contents were admissible on the theory that the defendant abandoned the bag *(see, People v Howard,* 50 NY2d 583, *cert denied* 449 US 1023; *cf., People v Torres,* 74 NY2d 224, 229, n 3)."

It is significant that the Court of Appeals in *People v Torres* (74 NY2d 224, 230, *supra)* reiterated the principle that intrusions upon the personal property of citizens "must be both justified in their inception and reasonably related in scope and intensity to the circumstances which rendered their initiation permissible". Consequently, deeming improper the action of the police therein in searching the passenger compartment of the suspects' automobile, the court declared *(supra,* at 230) that: "In this instance, for example, the suspects had already been removed from the car, a permissible intrusion if there was reasonable suspicion of criminality in light of the need to protect the detectives' safety *(Pennsylvania v Mimms,* 434 US 106; *People v McLaurin,* 70 NY2d 779). Further, the suspects had been patted down without incident. At that point, there was nothing to prevent these two armed detectives from questioning the two suspects with complete safety to themselves, since the suspects had been isolated from the interior of the car, where the nylon bag that supposedly contained the gun was located. Any residual fear that the detectives might have had about the suspects' ability to break away and retrieve the bag could have been eliminated by taking the far less intrusive step of asking the suspects to move away from the vicinity of the car *(see,* 1 La Fave & Israel, *op. cit.,* at 310). Finally, it is unrealistic to assume, as the Supreme Court did in *Michigan v Long (supra,* at 1051-1052), that having been stopped and questioned without incident, a suspect who is about to be released and permitted to proceed on his way would, upon reentry into his vehicle, reach for a concealed weapon and threaten the departing police officer's safety."

Although the fact pattern in *People v Torres (supra)* is dissimilar from the one involved here, the fact remains that the analysis by the Court of Appeals in that matter is perti-

nent under the circumstances of the instant case. There is no claim that defendant might have returned to the cab; rather, it is urged that he had abandoned the bag and was attempting to flee for no other reason than that he "flew" out of the vehicle and his way was obstructed by one of the officers. In effect, the Supreme Court decided that by endeavoring to remove himself rapidly from a vehicle while being blocked by a police officer, defendant might have been engaged in absconding and abandoning his property. However, the probative evidence does not establish that defendant had abandoned his property, and, at most, defendant's conduct was equivocal. Further, since the police blocked any effort by defendant to flee, assuming that this was his intention, he could not have abandoned his property, the police action having made that option impossible. The court, therefore, transformed what it perceived to be an intent to abandon property into an actual abandonment.